**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 22-cv-1123-WJM-MDB

JOSEPH HEFFNER, as trustee of the JOSEPHINE RENARD TRUST,

     Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, a foreign corporation, and
DSI HOLDINGS CORPORATION, d/b/a SERVICE MASTER DSI, a foreign corporation,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DSI**
**HOLDINGS CORPORATION D/B/A SERVICEMASTER DSI'S**
**MOTION FOR SUMMARY JUDGMENT**

---

     Before the Court is Defendant DSI Holdings Corporation's, d/b/a Service Master DSI, ("ServiceMaster") Motion for Summary Judgment ("Motion").[1]  (ECF No. 76.)  Plaintiff Joseph Heffner, as trustee of the Josephine Renard Trust, ("JRT") filed a response.  (ECF No. 81.)  Defendant filed a reply.  (ECF No. 92.)  For the following reasons, the Motion is granted in part and denied in part.

### I. STANDARD OF REVIEW

     Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] The Motion is within the page limits set by WJM Revised Practice Standards III.C.1. However, the Court cautions counsel for ServiceMaster against repeating its decision to include lengthy footnotes with excessively small font in future briefs submitted to the undersigned in this and any other action.

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[2]

JRT is the owner of real property located at 18600 E. U.S. Highway 24, Peyton, Colorado 80831 (the "Property").  The Property was damaged by a fire that occurred on or about December 16, 2020.

JRT purchased an insurance policy from Defendant Travelers Casualty Insurance Company of America ("Travelers"), Policy No. 680-5R363898-20-42, with a policy period of October 26, 2020 to October 26, 2021.  JRT notified Travelers of the fire damage to the Property.

---

[2] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

In response to the fire, ServiceMaster performed work at the Property that consisted of the removal of several items from the Property.  The items removed from the Property by ServiceMaster included part of the wall near the back door where the fire started, portions of the remaining exterior walls, the ceiling, and the floor.  JRT concedes that ServiceMaster completed some work at the Property but explains that JRT never authorized ServiceMaster to perform the work.  (ECF No. 81 at 3 ¶ 5.) Additionally, JRT states that much of the work ServiceMaster performed "was unrelated to the fire damage and fell below the applicable standard of care."  (ECF No. 81 at 3 ¶ 5.)  In asserting that ServiceMaster "oversimplifies" the work performed, JRT lists work ServiceMaster performed, including two feet flood cut around the perimeter of the interior of the building; removal of the ceiling; removal of the flooring in the main room, kitchen, office, hallway, and bathrooms; removal of the subflooring; removal of the custom bar.  (ECF No. 81 at 3–4 ¶ 6.)

On March 9, 2021, Travelers issued an initial estimate for JRT's insurance claim related to the fire.  JRT clarifies that its initial estimate from Travelers showed a total replacement cost value of $73, 868.24, of which $32,988.90 was allocated to the "smoke remediation" and $40,879.34 was allocated to the "rebuild."  (ECF No. 81 at 4 ¶ 7.)  Also on March 9, 2021, Travelers issued payment to Plaintiff in the amount of $60,144.26, which consisted of the actual cash value of its March 9, 2021 initial estimate, minus a $500 deductible.

On July 20, 2021, Travelers issued a revised estimate for JRT's insurance claim related to the fire.  The revised estimate showed a total replacement cost value of $93,735.34, of which Travelers attributed $34,996.31 to the smoke mitigation, and

$58,739.03 to the rebuild.  (ECF No. 81 at 4 ¶ 9.)  On or about July 20, 2021, Travelers issued payment to JRT in the amount of $18,884.91, which consisted of the actual cash value of its July 20, 2021 revised estimate, minus a $500 deductible and the prior $60,144.26 payment to JRT.

On September 30, 2021, Travelers issued a second revised estimate for JRT's insurance claim related to the fire.  JRT states that the revised estimate showed a total replacement cost value of $186,129.30, of which $34,996.31 was attributed to the smoke mitigation, and $151,119.92 to the rebuild.  (ECF No. 81 at 4 ¶ 11.)  Also on September 30, 2021, Travelers issued payment to JRT in the amount of $69,655.36, which consisted of the actual cash value of its September 30, 2021 revised estimate, minus a $500 deductible and the previous $79,029.17 paid to JRT.

ServiceMaster states that the work it performed at the Property was included in the estimates Travelers prepared and that JRT "received the actual cash value of the work performed by ServiceMaster at the Property," as well as for the work necessary to replace and/or repair the items removed from the Property by ServiceMaster.  (ECF No. 76 at 4–5 ¶¶ 13–16.)  However, JRT disputes this proposition, stating that ServiceMaster removed kitchen equipment and other fixtures that were not included in Travelers' estimates and for which JRT has not received payment.  (ECF No. 81 at 4 ¶ 13.)  Further, JRT states that Service Master "was not authorized to do any work at the Property, and ServiceMaster's unauthorized actions caused a foreseeable chain of events resulting in hundreds of thousands of dollars in additional construction necessary to bring the property into compliance with current building codes and construction practices."  (*Id.*)  According to JRT, such damages "are not accounted for in Travelers'

estimates." (*Id.*; *see id.* ¶¶ 14–16.)

ServiceMaster lists a litany of preexisting conditions it states were uncovered when it removed the ceiling, flooring, and portions of the walls. (ECF No. 76 at 5 ¶ 17.) However, JRT disputes the statement, arguing that the list comes from an inadmissible expert report.[3] (ECF No. 81 at 6 ¶ 17.)

ServiceMaster states that JRT contends it is cost-prohibitive to repair the Property due to these preexisting conditions. (ECF No. 76 at 6 ¶ 18.) In response, JRT does not dispute as much but clarifies that it is not only cost-prohibitive, but "the Pikes Peak Regional Building Department indicated that given the age and condition of the building after ServiceMaster's over-mitigation, it could not be repaired to current building standards." (ECF No. 81 at 6 ¶ 18.) JRT had the Property demolished on or about September 2022.

---

[3] With respect to a Response to Movant's Material Facts, WJM Revised Practice Standards III.F.4.c provides: "The opposing party may not 'deny' an assertion on grounds of evidentiary inadmissibility or other reasons for inadmissibility (including immateriality, irrelevance, lack of authenticity, lack of foundation, incompleteness, waiver, or estoppel). The opposing party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible at trial," Fed. R. Civ. P. 56(c)(2), and any party so objecting must include a concise explanation of its objection, but the party must still admit or deny the factual substance of the assertion."

JRT's Response to Statement of Undisputed Material Facts violates the undersigned's Revised Practice Standards III.F.4.c by stating: "17. Disputed. Defendant's statement contains inadmissible evidence. Pursuant to Fed. R. Civ. P. 56(c)(2) 'material cited to support or dispute a fact cannot be presented in a form that would be inadmissible in evidence.' The court may consider only admissible evidence when ruling on a summary judgment motion. *Newland v. Stevinson Toyota E., Inc.*, 505 F. Supp. 2d 689, 696 (D. Colo. 2007). There is no dispute that the Golden Forensics Report contains expert opinions, yet ServiceMaster did not offer this report (or its author) as either a retained or non-retained expert in this matter. *See* Exhibit 3, ServiceMaster's Expert Disclosures; Exhibit 4, ServiceMaster's Rebuttal Expert Disclosures. Thus, no expert has been designated to testify as to the contents of this Report."

Thus, JRT has not denied the underlying facts set forth in ServiceMaster's Movant's Statement of Undisputed Facts, paragraph 17, which lists numerous preexisting conditions. As a result, the Court deems these facts admitted.

### III. PROCEDURAL HISTORY

On April 5, 2022, JRT filed a lawsuit against Travelers and ServiceMaster.  (ECF No. 7 (Amended Complaint).)  JRT filed one claim against ServiceMaster for negligence and filed breach of contract and statutory unreasonable delay claims against Travelers. JRT alleges that ServiceMaster was negligent when it "improperly demolished areas of the Property that were not fire or smoke damaged, including walls, ceiling, and floors that were not near the fire location."  (*Id.* ¶ 102.)

JRT seeks as damages against ServiceMaster the cost to rebuild the Property due to the preexisting conditions uncovered by ServiceMaster's work; specifically, JRT seeks "the full cost to rebuild the Property," $1,156,176, due to "the inability to repair the Property in its then-current condition."

ServiceMaster has also filed a counterclaim against JRT, seeking payment for its work on the Property in the amount of $32,039.48.  (ECF No. 97 at 8.)

On May 5, 2022, Travelers removed this action from El Paso County District Court pursuant to this Court's diversity jurisdiction.  (ECF No. 1.)

### IV. NEGLIGENCE

Under Colorado law, to establish negligence a plaintiff must show "a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, *i.e.*, that the defendant's breach caused the plaintiff's injury."  *Mid-Century Ins. Co. v. InsulVail, LLC*, 592 F. App'x 677, 683 (10th Cir. 2014) (quoting *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002) (en banc)).  For the purposes of this Motion, the only element at issue is causation.  (*See* ECF No. 76.)

"To prove causation, the plaintiff must show, first, that, but for the alleged

negligence, the harm would not have occurred."  *Deines v. Atlas Energy Servs., LLC*, 484 P.3d 798, 801 (Colo. App. 2021) (citing *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011)).  "The requirement of but-for causation is satisfied if the negligent conduct in a natural and continued sequence, unbroken by any efficient, intervening cause, produces the result complained of, and without which that result would not have occurred."  *Id.* (quoting *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) (internal quotation marks, alterations omitted)).

However, "tort law does not impose liability on an actor for all harm factually caused by the actor's tortious conduct."  *Id.* (citing *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1022 (Colo. 2006)).  "Thus, in addition to establishing but-for causation, the plaintiff must also demonstrate proximate cause."  *Id.*  "Because foreseeability is the touchstone of proximate cause, to establish a negligence claim, the plaintiff must prove that the harm incurred was a reasonably foreseeable consequence of the defendant's negligence."  *Id.* (internal quotation marks and citations omitted). "Proximate cause may be established even where the actor did not and could not foresee the precise way the injury would come about."  *Id.* (citing *Webb v. Dessert Seed Co.*, 718 P.2d 1057, 1062–63 (Colo. 1986)).

A plaintiff must prove causation in fact by a preponderance of the evidence. *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987).  "Issues of negligence and proximate cause are matters generally to be resolved by the jury, and only in the 'clearest of cases where the facts are undisputed and reasonable minds can draw but one inference from them' should such issues be determined as a matter of law."  *Deines*, 484 P.3d at 801 (citation omitted).

# V. ANALYSIS

## A.    Preexisting Conditions

In its Motion, ServiceMaster argues that its alleged over-mitigation of the Property is not the but for cause of JRT's claimed damages.  (ECF No. 76 at 2.)  While ServiceMaster concedes that its alleged over-mitigation caused JRT to have *knowledge* of the preexisting conditions—which predominantly consist of structural deficiencies in the foundation, floor, and roof—it stops short of agreeing that its actions *caused* the preexisting conditions.  (*Id.*)  The conditions undisputedly existed before ServiceMaster worked on the Property.

The preexisting conditions that ServiceMaster uncovered include:

- a roof truss deflected beyond allowable limits;

- three cracked, cut, and split roof trusses;

- an unconnected roof truss; intermediate columns supporting the roof beams bearing on floor joists not intended to support the live loads of the tavern patronage and the dead and live loads of the roof system;

- severely decayed floor joists;

- a notched floor joist with severely reduced structural capacity;

- a floor joist deflected well beyond its allowable limits;

- a steel floor framing system corroded and severely bent out of plane to the point where it had little, if any, of its intended structural capacity;

- stacked concrete masonry unit ("CMU") piers underneath the steel floor framing system that had settled, rotated out of plumb, were leaning, and at risk of toppling over;

- CMU piers that that used tapered wood shims to span the distance between the top of the CMU blocks and the bottom of the steel beams;

- CMU piers stacked with CMU blocks on their weak axis and eccentrically loaded;

- CMU piers not in contact with the steel frame;

- CMU piers fractures in manner consistent with overloading;

- decayed wooden elements underneath the floor with little retention of their original structural capacity;

- non-metallic conduit not suitable for new commercial construction; and

- open junction boxes.

(ECF No. 76 at 5–6.)

First, the Court agrees that ServiceMaster's work was not the but-for cause of the alleged damages. ServiceMaster's alleged negligence did not cause the preexisting conditions, which permeated the Property *before* ServiceMaster began its remediation work. The Court understands the distinction that JRT attempts to draw. JRT argues that "but for ServiceMaster's *unauthorized overmitigation* of the property, JRT would not have been required to bring the property into compliance with current building codes." (ECF No. 81 at 16 (emphasis in original).) JRT further contends that "the issue is not that JRT learned of the conditions, but rather that because ServiceMaster exposed the conditions, JRT is now ***required*** to act to correct the conditions." Had ServiceMaster not conducted unauthorized, negligent activities at the Property, JRT would not have been required to bring the Property up to code." (*Id.* (emphasis in original).)

Despite the distinction JRT articulates, the Court agrees with ServiceMaster that "the preexisting conditions existed notwithstanding [its] conduct," and accordingly, "[its]

conduct is not a but-for cause of the preexisting conditions." (ECF No. 92 at 6.) In another construction lawsuit in the Southern District of Indiana, the court addressed similar arguments as the ones raised here, noting that the roofing contractor could only be liable for damages it caused to the warehouse. *Selective Ins. Co. of the Se. v. Cagnoni Dev., LLC*, 2008 WL 126950, at *12 n.6 (S.D. Ind. Jan. 10, 2008). Critically, the court noted that the contractor "cannot be held liable for damages that existed before it began installing the roof on the warehouse." *Id.*

Here, too, the Court concludes that no reasonable jury could find that ServiceMaster is liable for damage that existed before it began work on the Property. As a result, the Court finds that ServiceMaster is entitled to summary judgment to the extent JRT's claim seeks damages related to the preexisting conditions.

**B.    Code Compliance Issues**

JRT argues that but for ServiceMaster's allegedly unauthorized over-mitigation, JRT would not be required to conduct the extensive renovations now required by Pikes Peak Regional Building Department to bring the Property into compliance with current building codes. (ECF No. 81 at 2.) In its reply, ServiceMaster distinguishes between the conditions that pre-existed its work on the Property and any alleged code compliance work made necessary as a result of its work on the Property. (ECF No. 92 at 6.) According to ServiceMaster,

> [it] disputes that Plaintiff was required by any local authority to upgrade its Property to current building codes, but ultimately seeks summary judgment for any damages Plaintiff claims related to the preexisting conditions at the Property. To the extent that Plaintiff seeks damages against ServiceMaster for any costs to address the preexisting conditions at the Property – the inadequate roof and floor supports, for example – ServiceMaster is entitled to summary judgment. To the extent that Plaintiff now seeks

10

> damages against ServiceMaster for any costs to address
> code compliance issues created by ServiceMaster's work –
> that Plaintiff would have been required to widen a hallway to
> comply with the ADA, for example[] – those facts are in
> dispute and do not form the basis for ServiceMaster's Motion
> for Summary Judgment.  In other words, this Court can –
> and should – grant summary judgment to ServiceMaster,
> dismissing Plaintiff's claim for any damages based upon the
> preexisting conditions.

(*Id.* at 6–7.)

Given the foregoing concession by ServiceMaster that factual disputes remain concerning the code compliance issues, the Court denies summary judgment with respect to damages JRT claims as a result of code compliance issues.

## VI.     FINAL THOUGHTS

Given the foregoing, JRT's only remaining claim in this case seeks damages from ServiceMaster resulting from code compliance issues.  Accordingly, the value of JRT's claim has significantly decreased.  ServiceMaster's counterclaim for the outstanding balance for its work on the Property, storage charges, and interest is worth approximately $32,039.48.  (ECF No. 97 at 8.)

Given the nominal amount of damages remaining at issue in the case, the Court has every expectation the parties will successfully resolve this matter before trial. Proceeding to a five-day jury trial in federal court to resolve this minimal (in terms of amount in controversy) dispute would be a colossal misuse of the Court's limited resources, not to mention the significant time and expense such an undertaking would require of the parties in order to take such a minor dispute to trial.

## VII. CONCLUSION

Accordingly, for the reasons stated, the Court ORDERS as follows:

1.      Defendant DSI Holdings Corporation d/b/a ServiceMaster DSI's Motion for
        Summary Judgment (ECF No. 76) is GRANTED IN PART AND DENIED IN
        PART as set forth above; and

2.      This case remains SET for a Final Trial Preparation Conference on September
        13, 2024 and a five-day jury trial to begin on September 30, 2024 (ECF No. 98).

        Dated this 28th day of February, 2024.

                                        BY THE COURT:



                                        _____
                                        William J. Martínez
                                        Senior United States District Judge